Catón, Justice, delivered the opinion of the court: This suit was brought by Graves against Bledsoe, as the assignor of a promissory note. The declaration contains three counts. The first count avers that one Riley made the note in question payable to Bledsoe and Turpin, which was assigned by Turpin to Bledsoe, without recourse, and by Bledsoe was assigned to the plaintiff. It then avers the institution and prosecution of a suit by Graves against the maker to judgment, and that execution was not issued thereon, in consequence of the insolvence of [* 384] the maker. The second and third counts are the same, except that they do not aver the legal proceedings, but aver that the maker was insolvent when the note was made, when it was endorsed, and when it fell due, and that he had so continued till the commencement of this suit, so that a prosecution of a suit would have been unavailing. On the trial of the cause the plaintiff introduced- the note and endorsements, as evidence to the jury. It appeared, on inspection, that Turpin’s endorsement, as originally filled up, w;as to Bledsoe, without recourse, but that the name of Bledsoe had been erased, and the name of the plaintiff inserted in its stead. The plaintiff objected to the endorsement being read to the jury on account of a variance between it as it then stood, and the averment in the declaration. The plaintiff then introduced G. T. M. Davis, who testified that the note was given to him for collection by the plaintiff, at the time it was due, as his attorney. That the endorsement signed “B.F. Turpin” was then to M. O. Bled-soe, but that during the time it was in his office, some one in the office erased the name of Bledsoe, and inserted the name of Graves, as the endorsement then read ; which erasure was made without the knowledge or consent of the witness, or of the plaintiff, as far as witness knew. The court then permitted the note and endorsement to be read to the jury, to which the defendant excepted; and this decision is first assigned for error. In this the court was unquestionably correct. This evidence showed that the endorsements in truth were according to the averments in the declaration. The erasure being' made by a third person, without the knowledge of the plaintiff, could effect the rights of neither party, any more than if it had been occasioned by accident. Had such been the case, it could hardly be denied, that the party might explain the circumstance by proof, and thus give effect to the real undertaking of the party. Had the plaintiff made or procured the alteration, with a fraudulent intent, the case would have been sufficient. As it was, the original contract between the parties still subsisted, and when that was ascertained, it was proper for the court to let it go to the jury. The only remaining error comes out of the instructions given and refused.- As the first instruction given for the plaintiff, and the one refused to be given, as requested by the defendant involve substantially the same principle, they will both be considered together. The instruction given was as follows: “If the jury believe, from the evidence, that at the time the note became due, Riley, the maker, had become insolvent, and that there were judgments and executions against him for more than all the, property in his possession would pay, Graves was not bound to prosecute a suit on the note, in order to make Bledsoe liable on .his endorsement.” The instruction refused was this: “ If [* 385] the jury believe, from the evidence, that the plaintiff could have made the debt on the note, by execution against either real or personal property of Riley, at any time from the time execution might have been obtained, until this suit was brought, the defendant is not liable.” In order to determine the propriety of these instructions, it is necessary to give a construction to the second section of our act relative to promissory notes. That act provides that the assignor shall be liable to the assignee, provided he shall have used due diligence in the institution and prosecution of a suit against the maker or makers of such assigned note, for the recovery of the money or' property due thereon, or damages in lieu thereof: Provided, that if the institution of such suitwould have been unavailing, or that the maker or makers had absconded or left the State, when such assigned note became due, such assignee may recover “ against the assignor, as if due diligence had been used.” R. L. 483; Gale’s Stat. 527. Under this statute there are three contingencies in which the endorser may be made liable: first, when the assignee has used due diligence to collect the money by the institution and prosecution of a suit against the maker; secondly, when such suit could not have been instituted, by reason of the maker having left the State, or absconded, when the note fell due; and, thirdly, when the institution of a suitwould have been unavailing. Here the plaintiff has attempted to bring his case within the latter provision, to which alone these instructions refer. The en-quiry now arises, whether the holder can delay proceedings both against the maker and endorser, after the maturity of the note, and afterwards hold the latter liable, by showing the insolvency of the former when the note fell due, although the money might have been collected of him between that time and the institution of the suit against the endorser. We are of opinion that he cannot. If at the time the note falls due proceedings againsf the maker would be unavailing, the holder may proceed immediately against the endorser; but if he will not do this, he must be prepared, m order to fix the liability of the endorser, to show that a suit against the maker would have been alike unavailing, in the intermediate time, while he retained the note. If he omit any opportunity of collecting the money of the maker, before he proceeds against the endorser, he is guilty of such laches as will discharge the latter. It was urged that the endorser nygkt, by paying the amount, obtain the note, and himself embrace any opportunity of collecting it of the maker. But this argument is more plausible thanjust. The maturity of the note is passed, and the endorser, hearing nothing of its dishorn may well presume that it has been paid, or if not, that all the legal measures have been adopted to coerce payment from the maker, [* 386] which he could have instituted, had he been in possession of tho note himself. By the law merchant, the holder was bound to notify the endorser of the nonpayment of the note on the third day after it fell due, or bis remedy against him was gone. This notice is dispensed with here; but sound policy and justice to the endorser require promptness and vigilance on the part of the holder. Another reason may be assigned why the endorser ought not to be bound to seek the holder, and pay the note before he is entitled to the benefitof legal proceedings against the maker. The note has been put in circulation, and may have passed through several hands, and he has no information where it may be found. We cannot doubt, if the law had intended to have imposed this duty upon him, it would not have dispensed with the notice formerly required. Here the holder has seen fit to lie by for two years, after the note fell due, before calling on the endorser for payment, or in any way informing him of the default of the maker, During this time the defendant may have seen the maker with abundant means in his hands to have paid the note, without supposing that he has any interest in his pecuniary circumstances, especially when he sees the holder looking on and making no complaint that the note has not been paid. To hold the defendant liable, under such circumstances, would be protecting one who has been guilty of neglect and delay, at the expense of another who is guilty of no default. If he delays to prosecute the maker immediately, when he sues the endorser he must show that the institution of a suit against the maker would have been unavailing, at any time intermediate between the maturity of (he note and the commencement of proceedings against the endorser. If he is not bound to show the continued insolvency of the maker, he may with the same propriety select one period of the intermediate time as airother, when he may establish that insolvency. And this is the construction which the plaintiff himself has put upon the statute; for he has averred in his declaration the continued insolvency of the maker till the commencement of this suit; and this one of the issues between the parties, as tendered by the plaintiff himself, to which the instructions should have conformed. If we are right in this view of the law, the court erred in refusing to instruct the jury, that the defendant was not liable if the money could have been made on execution against the maker, at any time afte^ one could have been obtained, and before the commencement of this suit, and in so much of the instruction given as involves the same principle. The court was correct in instructing the jury, that the plaintiff was not bound to go into a court of chancery to remove obstructions in the way of an execution against the maker, before he could proceed against the endorser. It was only necessary that he .should have used due diligence by proceeding at law [*387] against the maker. The judgment must be reversed and the cause remanded.